PETER ST. MARTIN & Co. *v.* SAMUEL P. THRASHER, *Survivor of* MORRISON & THRASHER.

*Partnership. Arbitrament and Award. Contract. Evidence.*

The presence of one partner, who was a Frenchman, and understood English imperfectly, at, and participation to some extent in, a conversation between his co-partner and the defendant, concerning a matter in dispute between the plaintiff partnership and the defendant, which resulted in a submission by the co-partner and the defendant of the matter to arbitration, *held* not to be conclusive of the Frenchman's assent to the award, he not having understood that his co-partner agreed to submit, and having never assented thereto.

A partner has no authority, by virtue of his relation as partner, to bind his co-partner by a submission of a copartnership matter to arbitration, so as to make the award in pursuance of such agreement binding on the firm.

The plaintiffs and the defendant having entered into a written contract, by which the plaintiffs were to cut and fit the stone for walls of a tunnel, at a specified price per foot, " the face of the work that shows to be measured, and none else," and there being a dispute as to the meaning of the words, "face of the work," the plaintiffs claiming and giving evidence tending to prove they included all the cut and dressed surface exposed, both horizontal and perpendicular, the defendant giving evidence of the opposite character, and tending to show the words only meant the perpendicular fronts of the walls, it was *held*, that evidence was properly excluded as to what was said in the oral negotiations between the parties prior to the execution of the written contract as to how the measurement should be made, or what face measurement meant.

The plaintiffs having agreed to furnish tools, but having used the defendant's tools, and given credit therefor, in their account, expecting to pay for their use, should be held to the credit they gave, though the defendant had not, until the commencement of the suit, intended to claim it.

THIS was an action of assumpsit, and was referred to a referee, to be heard and decided according to law. Upon the coming in of the referee's report, the defendant filed exceptions thereto, for the erroneous rulings of the referee in excluding testimony. The court, at the September Term, 1867, PIERPOINT, Ch. J., presiding, *pro forma*, overruled said exceptions,—to which the defendant excepted.

The court, *pro forma*, rendered judgment on the report of the referee for the defendant,—to which the plaintiffs excepted.

The facts found by the referee, essential to an understanding of the case, were as follows:

" The plaintiffs introduced the contract marked "A."

" The plaintiffs, at the time in question, composed the firm of Peter St. Martin & Co., named in it, and the defendants were the other parties thereto.

" The plaintiffs, pursuant to the contract, performed the work named in it for them to perform, and in the manner, substantially, provided by the contract.

" The structures for which the cutting and fitting of stone provided by the contract were done, were composed of the stone so cut and fitted, and comprised the stone work ends of the railway tunnel in the city of Burlington. Each structure is a wall of hewn stone, the center part of which is at right angles with the line of the tunnel, and the outer part of which inclines away from the tunnel, at a small angle with the center part, in order to prevent the earth from sliding upon the railway. This wall of stone slopes upward from the base at ends, and until it reaches a sufficient height, where its top is horizontal—the slope being made by the regular shortening of the courses of the masonry, making a succession of steps.

Martin et al. *v.* Thrasher.

" The thickness of this wall, and thus the width of the surfaces of these steps was about four feet, and the thickness of the courses, and thus the height of the steps was about two feet. The horizontal top of each structure was finished with a coping stone. In the proper performance of said contract, the plaintiffs dressed, cut and finished both the horizontal surfaces, called the tread, and the perpendicular surfaces, called the drop, of these steps, and in like manner cut, dressed and finished the top horizontal surfaces of the coping stones.    *    *    *

" The company's engineer never did measure the work in the walls, or decide the number of feet so laid, but the defendants, from time to time, made payments to the plaintiffs, as the work progressed, in round sums, intended to approximate to what would be due to the plaintiffs by the contract. When the work was finished, the parties met for the purpose of settling up the balance supposed to be due to the plaintiffs.    *    *    *    A question then arose as to the parts of the structures that were to be measured and paid for—the plaintiffs contending that, under the contract, not only the fronts of the walls were embraced in the contract, but also the cut and dressed, and exposed horizontal surfaces of the copings, and the drops and tread of the wings ; this, the defendants, acting by Thrasher, as below stated, disputed. The company's engineer was not accessible, and the defendants, acting by Thrasher, as below stated, proposed to leave the question to one Hale, who was an assistant engineer in the service of the company. Thereupon the parties went to the office of the engineer, where Hale was. Grant, one of the plaintiffs, had, before that time, sold out his interest to St. Martin and Barrett, and was not present. St. Martin was a Frenchman, and understood English very imperfectly. The defendant, Thrasher, who professed to act for all the defendants, and as to whose authority so to act, no question was made at the hearing, and Barrett then agreed, in the presence of St. Martin, he participating to some extent in the conversation on the subject of the dispute, to leave the question, in dispute, to the final decision of Hale, but I find that St. Martin did not understand that fact, and did not consent thereto, unless the law implies an assent from his relation as partner to Barrett in the work, and from his presence at the making of the submission as herein stated. Neither did he dissent, for he was not aware of the nature of the transaction then going on. Hale consented to act, and after consideration decided, in the presence of the same parties, that the plaintiffs were only entitled, by the contract, to be paid for the fronts. St. Martin thereupon, supposing that Hale was giving advice instead of judgment on the point, went away dissatisfied, but the defendant, Thrasher, acting as aforesaid, and Hale supposed that St. Martin understood the transaction, and assented to it. Afterward, and before suit, the plaintiffs applied to the company's engineer to go and measure the work under the contract ; but he declined.

Martin et al. *v.* Thrasher.

" The plaintiffs gave evidence by parol testimony, tending to show that the meaning of the terms in the contract, " face of the work," &c., would include all the cut and dressed surfaces above described, and the defendants gave evidence of the opposite character, and tending to show that the words only meant the perpendicular fronts of said wall. On this point the defendant also offered to show what was said in the oral negotiations between the parties prior to the execution of the written contract, as to how the measurement should be made, or what face measurement meant, which offer, on the objection of the plaintiffs, I overruled And on this point, also, the defendant offered to show that after contract " A " was written, except the last clause, one of the defendants suggested that such a clause as the last should be added, which offer was objected to by the plaintiffs, and overruled.

" I find, from the evidence, that the terms referred to do embrace the work before described as coping, treads and drops, and that this part of the work done by the plaintiffs, was embraced in the contract, to be paid for at the contract rate.

" I find, therefore, that the whole amount of work done, under the contract, was 6848 square feet, which amounts, at the contract price, to - - - - - - $953 72
Paid in cash, - - - - - - - - 680 00

Leaving due the plaintiffs, under the contract, - $278 72

if the plaintiffs are entitled to recover the same under the facts herein stated.

" The defendant also claimed, that if any thing was due to the plaintiffs, upon the contract, the sum due ought to be reduced by the value of certain tools and machinery of the defendants, which, by their consent, the plaintiffs had and used upon the work, and failed to return. I find, on this point, that in fact the plaintiffs did so have such tools and machinery, and used the same, and Grant, when he sold out, as above stated, carried off five dollars worth of it, and the value of the use of the residue, and that used up by the plaintiffs, was thirty dollars, but I find that no claim was made for this matter at the time of the dispute, and that, at that time, the defendants did not intend to charge anything for said tools, &c., nor until after the suit was brought. The plaintiffs, however, in their specification in this cause, filed in court, (referred to), gave credit on this account to the defendants, twenty-five dollars, on account of this part of the affair, and the defendant insisted that this bound the plaintiffs to diminish their claim or recovery by that amount. Thereupon the plaintiffs asked leave to amend their specification by striking out the clause or credit named, which I declined to entertain for want of jurisdiction of the files of the court. * * *

" Upon the papers and the facts detailed, the defendant contended that the plaintiffs are not entitled to recover at all, or if at all, only

for any sum due and unpaid or unsatisfied in respect to the fronts of said walls. But the plaintiffs contend that they are entitled to recover the largest sum named." * * *

## CONTRACT "A."

" An article of agreement, made and concluded this sixth day of May, 1861, by and between Peter St. Martin, Peter Barrett, and Joseph Grant, of Burlington, Vermont, of the first part, and E. J. Morrison, and S. P. Thrasher, of New Hampshire, of the second part.

" Witnesseth : That said parties, of the first part, agree to furnish tools, and to perform all the cutting, fitting and lewising for the tunnel fronts and wing walls to be used at the tunnel for the Vermont and Canada Railroad,—work to be executed as fast as required for said walls, and in accordance with, and to the acceptance of the said company's engineer ; and the said Morrison and Thrasher agree to pay for each and every superficial foot so cut and fitted, fourteen cents, to be measured in the walls after laid. The said company's engineer to estimate and decide the number of feet so laid ; and on or before the 15th of each month, the said party, of the second part, agree to pay ninety per cent., the balance, or retained ten per cent., to be paid as soon as the work is completed and estimated as above.

" The mutual understanding is, that all the face of the work that shows is to be measured, and none else.

" Morrison & Thrasher.
" Peter St. Martin & Co."

*L. L. Lawrence* and *Jeremiah French*, for the plaintiffs.

*Hard & Shaw*, for the defendant.

The opinion of the court was delivered by

Peck, J.   The principal question in dispute before the referee was as to the mode of measuring the stone dressed by the plaintiffs under a written contract at a specified price *per* foot. The defendant insists that this question is conclusively settled in his favor by the award of one Hale, to whom he claims the question was submitted for final decision. The plaintiffs claim that St. Martin never agreed to submit the question to Hale, for decision, nor consented to such submission ; and the referee so finds the fact ; unless by his relation as partner he is in law bound by the agreement made by his co-partner

in his presence under the circumstances stated. St. Martin, as the referee finds, being a Frenchman and understanding English very imperfectly, and not understanding that his partner agreed to submit the question to Hale for decision, and supposing that Hale was only giving advice in the matter, is not, as matter of law, bound by reason of his presence ; notwithstanding the referee finds that he on that occasion participated to some extent in the conversation *on the subject of the dispute.* It is not, as claimed by defendants counsel, a mere mistake or want of knowledge as to the legal effect of a submission and award. The presence of St. Martin under such circumstances is only evidence of his assent to the agreement of his partner, but not conclusive. The referee having found the fact against the defendant we are bound by his findings.

The question then is whether one partner by virtue of his relation as partner, has authority to bind his co-partners.by a submission of a co-partnership matter to arbitration, so as to make the award in pursuance of such agreement binding on the firm. We think that upon principle, no such power is implied from the co-partnership relation. The exigencies and convenience of business do not require a partner to possess such power. The following cases recognize this principle, and in some of them the point was directly involved and decided, although in others the partner, in making the submission, did not make it in the name of the firm : *Steele et al* v. *Salt*, 11 Com. L. 50 ; *Harrington* v. *'Higham and others*, 13 Barb. 660 ; *Buchoz* v. *Grandjeau*, 1 Mich. ; *Onion* v. *Robinson*, 15 Vt. 510. Other cases to the same effect might be referred to. Elementary authorities lay down the same principle. It has been decided in this State that one partner has no authority by virtue of the relation of partner, to accept service on a writ for himself and partner. The reason seems to be quite as strong against the power of a partner to create a court and bind his co-partner by the decision ; since the very foundation of an award is the agreement of submission. The case therefore must be decided on its merits unaffected by the award.

The question then is, whether the referee erred in rejecting certain evidence offered by the defendant in relation to the mode of measuring the work ; that is, as to the meaning of the words, "*face of the*

work," in the written contract. The plaintiffs gave parol evidence tending to show that the meaning of the term, "*face of the work*" would include all the cut and dressed surface described in the report and claimed by the plaintiffs as proper to be measured ; and the defendant gave evidence of the opposite character tending to show that the words only mean the perpendicular fronts of the wall. The referee found the meaning of these words as the plaintiff claimed. But the referee excluded evidence offered by the defendant as to what was said in the oral negotiations between the parties prior to the execution of the written contract, as to how the measurement should be made, or what face measurement meant. It is a general rule that when a contract is reduced to writing, all previous verbal declarations of the parties in the course of their negotiations become merged in the written contract, and the parties are bound only by the language of the written contract, so far as the construction of the contract affects their rights under it. In general the same rule applies where technical words or terms of art are used in the contract, as in other cases. In the latter case, however, if the words are peculiar to the art or trade to which the contract applies, it is competent to show by parol the sense in which the words are used and understood in that art or trade generally. When this is shown the words are to be taken in that sense, and thus the contract speaks for itself. But if from such evidence it appears that the words in question as generally used as applicable to the subject, apply indifferently to two or more things or objects, it is open to proof showing to which object or subject the contract in question applies ; as it does not contradict the sense in which the words are generally used as previously proved. Such is the case of *Hart* v. *Hammett*, 18 Vt. 127, so much relied on by the defendant's counsel. That was a case of the sale of a quantity of oil, expressed in the written contract as " *winter strained lamp oil.*" It was proved that these words as generally used in the oil trade, apply indifferently to winter strained *sperm* lamp oil, and to winter strained *whale* lamp oil, and that the latter is inferior to the former in quality. The defendant subsequent to the execution of the contract delivered winter strained *whale* lamp oil. In this state of the case parol evidence was held to be admissible to show that at the time the contract was

executed the defendant exhibited to the plaintiff a sample of the oil to be delivered, and informed him that it was not *sperm* oil. That was substantially a question of identity of the subject matter of the sale. The principle recognized in that case does not warrant the admission of the evidence in this case excluded by the referee. That evidence was properly excluded. The plaintiffs are, therefore, entitled to recover on the basis of the larger measurment.

The only remaining question is whether the $25. for the use of tools should be allowed and deducted from the claim of the plaintiffs. The facts reported show clearly that in justice and equity it should be allowed. By the contract the plaintiffs were to furnish the tools to perform the work. The plaintiffs should account for the use of the tools furnished by the defendants, unless the objection that the defendants did not, until the commencement of the suit, intend to claim it, is a bar. Generally there can be no recovery for what was understood by the parties at the time as a gratuity; and so *generally* where the party making the claim so intended it. In this case it appears satisfactorily that the expectation of the plaintiffs was that they were to account for the use of the tools; for in their specification filed in the cause in court, they credit the $25. for such use of tools. It does not appear that the plaintiffs ever knew or supposed that the defendants had any other intent or expectation until it came out on trial before the referee. So that it cannot be said that the plaintiffs used the tools on the faith that it was to be a gratuity. We do not regard a specification filed in court as so far conclusive against the party filing it, as to be beyond the power of the court to allow it to be amended in case of a mistake. A state of facts might appear before a referee which would justify the court in not holding the party strictly to the specification in case of mistake, although no amendment of the specification had been previously made. In this case there was no mistake on the part of the plaintiffs in relation to the specification as to this item, except they were not aware of the intention of the defendant not to charge it. Whatever force there is to the objection to this item is purely technical and against the equity and justice of the case. Whether we look at this item as an abatement of so much of the plaintiffs' claim for not furnishing tools as

they agreed, or as a counter claim on the part of the defendant, as the plaintiffs used the tools expecting to account for the use, they should be held to the credit they have given in their specification.

The $5,00. item is not insisted on by the defendant's counsel.

Judgment reversed and judgment for the plaintiffs for the larger sum, deducting the $25.