GROUT BROTHERS *v.* O. R. MOULTON.

May Term, 1906.

Present: ROWELL, C. J., TYLER, WATSON, and POWERS, JJ.

Opinion filed August 2, 1906.

*Assumpsit—Goods Sold and Delivered—Evidence—Written Contract—Whether Dispositive or Evidentiary—Oral Testimony of Intention—When Permissible—Principal and Agent—Proof of Agency—Sufficiency—Representations of Agent—Breach of Agency Contract—Error not Cured by Charge—Exceptions on Specified Ground—Effect.*

Defendant's cross-examination of plaintiff's witness as to the contents of a written contract was harmless, where it revealed only the witness's inability to remember anything about the contents.

In assumpsit for the price of an automobile sold and delivered as part of a written contract whereby plaintiffs gave defendant the exclusive agency for the sale of their automobiles in certain counties, defendant claiming an offset by way of damages caused by plaintiffs' alleged breach of said contract by a written bilateral contract, not offered in evidence, between plaintiffs and third parties, assigning to the latter the exclusive agency of one of said counties, it was not error, as against plaintiffs' objection to the effect only that it was immaterial what said bilateral contract was, to receive in evidence a certain other bilateral contract signed only by plaintiffs, but which, in connection with the testimony of defendant's witness, tended to prove the contents of said first-mentioned bilateral contract.

The admission of a certain letter written by plaintiffs to defendant's. witness, and which he received from them together with said bilateral contract signed only by them, if error, was harmless.

The mere fact that plaintiffs, during the life of their said contract of agency with defendant, by a contract with third parties, assigned to them the exclusive agency of a part of defendant's territory, was a breach by plaintiffs of their contract with defendants; and it was material to show what that contract was, regardless of the fact that nothing was ever done under it; that objection goes to the damages, not to the right.

In assumpsit for the price of a steam automobile sold and delivered as part of a contract whereby defendant became plaintiffs' agent for the sale of their automobiles, and which defendant purchased as a demonstrating machine whereby to sell other of plaintiffs' machines, and claimed that plaintiffs represented that it was. equipped with a fusible plug, it was proper to allow defendant's witness to testify that in the summer of said purchase, the public demanded fusible plugs in steam automobiles, and to allow another of defendant's witnesses to testify that, shortly after said purchase, one of the plaintiffs explained to him the necessity and utility of fusible plugs in steam automobiles.

Evidence examined and *held* that a certain person who, as defendant's. evidence tended to prove, made false representations to him as to the equipment and style of the automobile in question at the time he purchased it, was the agent of plaintiffs, and was acting within .the scope of his agency when he made said representations.

To make a seller responsible for false representations made by his agent in respect of the subject-matter of the sale, it is not neces-

sary that they should have been simultaneous with the conclusion of the contract, but only that they should have been made during the negotiations that led to the contract, have influenced the buyer in making it, and entered into it as a part thereof.

Direct oral statements of intention in respect of the subject-matter of a contract are admissible in evidence only when the language used is equally applicable in all its parts to more than one external object.

In assumpsit for the price of an automobile sold and delivered under a written contract which required payment of the car on delivery and "satisfactory demonstration," although plaintiffs proved what "demonstration" means as understood in the trade, it was error to allow defendant, as tending to show what the parties understood it to mean as used in the contract, to prove direct oral statements of one of plaintiffs, made at the time the contract was executed.

The writing in question examined and *held*, that said oral statements were not admissible on the ground that the writing is not dispositive, but only evidentiary; for it is dispositive.

Error in the admission of evidence cannot be cured by instructing the jury to disregard it.

Where evidence complained of was received on re-examination, and nothing appears to show but that it was made admissible by the cross-examination, no error is shown.

Where a party excepts, on a specified ground, to the submission of a certain question to the jury, he will be confined to that ground in the Supreme Court.

Evidence examined and *held* that it tended to show that plaintiffs' agent represented to defendant that the car sold him was a 1903 model.

In assumpsit to recover the price of an automobile sold and delivered, wherein one issue was whether defendant had accepted the machine, and defendant claimed damage by way of recoupment, and also to recover a large sum under his declaration in offset, and one item of $11.25 in his specifications in offset was admitted and the jury instructed to allow it, either in recoupment or offset, and the jury returned only a general verdict for defendant to recover his costs, the case shows by necessary inference that the jury found that defendant had accepted the machine; therefore, if it was error to submit that question, it was harmless to plaintiffs.

GENERAL ASSUMPSIT for the price of an automobile sold and delivered. Pleas, the general issue, declaration in offset, consisting of the common money counts, a count to recover commissions on certain sales of automobiles made by plaintiffs in defendant's territory, a count to recover damages for the alleged failure of plaintiffs to equip said automobile with a fusible plug and steam air pump, and for failure to properly demonstrate same. Replications, *similiter,* and general issue to the declaration in offset. Trial by jury at the September Term, 1905, Orleans County, *Munson,* J., presiding. Verdict for defendant to recover his costs. The plaintiffs excepted. Plaintiffs also moved to set aside the verdict for want of evidence to sustain it. Motion denied, to which plaintiffs excepted.

It appeared that in March, 1903, the plaintiffs, residents of Orange, Massachusetts, were manufacturers and dealers in steam automobiles, under the firm name of Grout Brothers, and that at that time an automobile show was held at Boston, Massachusetts.

The defendant's evidence tended to show that he then lived in Derby, Vt., and was a dealer in sewing machines, pianos, organs, and horses, that he attended said show to learn about automobiles and to take the agency for some automobile adapted to his section of the country if he could make satisfactory arrangements; that while at said show he examined several different makes of automobiles on exhibition there; that the plaintiffs had no automobiles on exhibition at the show but had an office and automobile repository in Boston where their automobiles were on exhibition, and had agents, with automobiles, running back and forth from said repository to said show soliciting customers; that on March 19, 1903, one of plaintiffs' said agents had one of their automobiles

in the street close to the sidewalk in front of the building where said show was carried on; that while the defendant was examining said automobile he was approached by one Walker, who was a person other than the one in control of said automobile, and who the defendant claimed the evidence tended to show was then the agent of the plaintiffs, but which claim was denied by the plaintiffs; that on being asked by said Walker if he was interested in automobiles and thinking of buying, the defendant informed him that he was thinking about taking the agency for some machine if he could arrange for something that was right, in the right way; that thereupon said Walker explained and enlarged upon the merits of Grout automobiles, told the defendant the commission allowed agents, and produced and delivered to defendant a catalogue then issued to the public by the plaintiffs in advertising their said automobile business; that said Walker then and there explained to the defendant the use and necessity of a fusible plug as an equipment of a steam automobile, and represented to the defendant that all Grout Automobiles were equipped with such fusible plug, and that the steam air pump of plaintiffs' machines was a better system than the Stanley system of generating air; that the defendant was then and there in conversation with said Walker concerning Grout automobiles for about an hour and a half; that at his hotel that evening, after the theater, the defendant in company with a friend who had accompanied him on said trip, studied various automobile catalogues, including said catalogue, and at that time read the following printed matter in said catalogue: "Our generator contains fusible plug, and cannot burn out." That on the morning of March 20, 1903, before defendant and his friend had breakfasted, said Walker met them at their hotel, and after sitting with them at breakfast took them to plaintiffs'

said repository, and then and there introduced defendant to plaintiff, Charles B. Grout, that said Charles B. Grout showed the defendant, and the defendant examined, several of plaintiffs' automobiles in said repository, and among others one of a model called Dos a Dos, which is the automobile in question; that the defendant was informed by said Grout that, in order to secure the agency of their automobiles, he must purchase one of their machines for the purpose of demonstration; that the defendant then purchased one of plaintiffs' automobiles which was the above mentioned Dos a Dos, as a part of a contract whereby he then took the agency of the Grout automobiles for the counties of Franklin, Orleans, Lamoille, Caledonia and Essex, in the State of Vermont, that the following contract was then made and executed by the parties:

I, O. R. Moulton, West Derby, Vt., party of the second part, do hereby agree to conform with the following, in consideration of accepting the agency for GROUT AUTOMOBILES, delivered to me by Grout Brothers, Orange, Mass., party of the first part.

In consideration of the following territory, (namely) Franklin, Orleans, Lamoille, Caledonia, Essex, I agree to purchase one automobile, advertise and dispose of same to the best of my ability, and it is my honest and sincere belief that I will dispose of four before the close of the current year, ending January 1, 1904.

Furthermore, I do hereby agree not to accept the agency of or sell other STEAM AUTOMOBILES than manufactured by the parties above mentioned until this contract shall have become void.

All in consideration of which Grout Brothers, party of the first part, agree to allow me the exclusive agency for sale of their goods in the above named territory.

Furthermore, Grout Brothers agree to fully protect O. R. Moulton, party of the second part, and that they will not dispose of, or accept sale for their goods in the following territory, i. e., Franklin, Orleans, Lamoille, Caledonia,. Essex, unless all goods manufactured by them shall be ordered by, or through, or commissions allowed on such sales, to O. R. Moulton, party of the second part and that they will furnish him with all printed matter, catalogues, cuts, posters, etc., as he may deem advisable, free of charge.

This contract to be void January 1, 1904.

. .|. .|. .|. ... .|. .|. .|. . . .|. .|. .party of second part.

. .|. .|. ... .. .|. .|. .|. .|. . .|. ... .|. .party of first part.

Sworn before me this           day of           1903.

. . . . . . . . . . . . . . . . . . . . . . . . .Notary Public.

One Dos a Dos at $775, less 20 percent—$620, cash to be paid on delivery of car if satisfactory demonstration, and if four more are bought 25 per cent is to be allowed on the five.   All goods to be delivered at or in said territory."

                    O. R. MOULTON.
                    GROUT BROTHERS.

Said contract was made upon a printed form, the requisite blank spaces being filled in with a pen, except that the last paragraph, following the word "Notary Public," was wholly written.

The defendant's evidence further tended to show that about the time the contract was completed he asked Charles B. Grout if he guaranteed every proposition in said catalogue, and Mr. Grout replied that he would guarantee every state-

ment in said catalogue except the statement on page 3 thereof·: "economy of working about one-half cent per mile;" which should read one and one-half cent per mile.

The plaintiffs claimed, and their evidence tended to prove that the defendant thoroughly examined the automobile in question before he purchased the same, and that it then contained no fusible plug or steam air pump, and that they delivered said automobile to the defendant according to the contract, with all the attachments which were sold with it, that they demonstrated said automobile according to contract, and were ready and willing to demonstrate it further and to instruct the defendant further in its use, if he so desired, but that they were prevented from so doing by the defendant.

It appeared that defendant had paid the freight on the automobile, which amounted to $11.25, when he took it from the station in March, 1903, and that plaintiffs had never repaid him this sum. It was conceded that this sum, $11.25, should be allowed defendant in offset or recoupment, and the court so instructed the jury.

The defendant claimed, and claimed that his evidence tended to show, that he was fraudulently led to believe that the automobile in question was a new style of car of 1903 make, and that he would not have bought it, if he had known that it was not a style of that year. The defendant further claimed and his evidence tended to prove that the automobile was not what he purchased and that it lacked a fusible plug and steam air pump; that the automobile was not demonstrated to his satisfaction; that the plaintiffs had sold one or more automobiles in territory assigned to him in the contract of agency hereinbefore set forth; and that he was entitled to the commission on said automobile or automobiles; that at

the time he attended said automobile show he knew very little about automobiles or their construction and operation; that at the time he bought the automobile in question and took said agency he told plaintiff Charles B. Grout that he knew nothing of automobiles except what he had been told; that said Grout knew that defendant was purchasing said automobile for demonstrating purposes wherewith to sell other automobiles; that defendant would not have purchased said automobile if he had known that it was not an up-to-date model of the year 1903; that he was not told by the plaintiffs or their agents that it was a model of 1902.

Defendant's evidence also tended to prove that about the middle of April, 1903, one Joseph St. Jock of St. Johnsbury, Vt., and one E. J. Blodgett of Lyndonville, Vt., visited the plaintiffs' factory at Orange, Mass.; that while at said factory a written contract was made between the plaintiffs of the one part and said St. Jock and Blodgett of the other part, whereby plaintiffs gave said St. Jock and Blodgett the exclusive agency of the County of Caledonia in the State of Vermont during one year from that time for the sale of the automobiles manufactured by the plaintiffs; that then and there said St. Jock and Blodgett bought three automobiles under their said contract of agency, and were to pay for the same when they got home if they proved satisfactory; that one of said automobiles was at the price of $1,200, and one at $862, both of these to be at a discount of 20 per cent, and one was a second hand car at the price of $500, without any discount; that the said prices without discount were the regular price to customers, and that said discount was the reduction made to said St. Jock and Blodgett as agents, in accordance with their said contract of agency; that said automobiles were taken from Orange to St. Johnsbury by three of plaintiffs' agents; that said $1,200

car and said second hand car proved unsatisfactory and were taken back to Orange by plaintiffs' said agents, that said $862 car was kept and paid for; that said St. Jock and Blodgett never did anything further under their said contract of agency, but that said St. Jock sold a few Stanley automobiles thereafter during the summer of 1903; that during the summer of 1903, the public did demand fusible plugs in steam automobiles.

The material part of plaintiffs' letter of April 8, 1903, referred to in the opinion, is as follows: "About the agency, we have decided to place Caledonia in your hands and enclose contracts for you to sign. They are not very binding and simply give us a list of our agents and the territory that they wish to cover."

E. J. Blodgett was produced as a witness by the defendant. In his direct examination he was permitted to testify subject to plaintiffs' objection and exception, that at the time he and St. Jock were at plaintiffs' factory in Orange, in April, 1903, as aforesaid, he was told that the fusible plugs were to save the boilers from getting burned in case the water got low, that they were putting them on the boilers to their cars, and that they were on the cars that said St. Jock and Blodgett had bought.

Though blank verdicts, under defendant's declaration in offset, were prepared and given to the jury, they returned only a general verdict for the defendant to recover his costs.

*Frank D. Thompson* for plaintiffs.

The admission of the testimony of defendant's witness, Blodgett, as to what plaintiffs told him about the necessity and use of a fusible plug, was error. This was *res inter alios*.

*Jones* v. *Est. of Ellis,* 68 Vt. 544; *Aiken* v. *Kennison,* 58 Vt. 665; *Pictorial League* v. *Nelson,* 69 Vt. 162; *Dover* v. *Winchester,* 70 Vt. 418; *Phelps, Dodge & Co.* v. *Conant,* 30 Vt. 277.

Agency cannot be proved by the agent's act or declarations. *Dickerman* v. *Fire Ins. Co.,* 67 Vt. 609; *Sias* v. *Consolidated Lighting Co.,* 73 Vt. 35; 1 Greenl. Ev., § 114, note; *Fifer* v. *Clearfield etc. Co.,* (Md.) 62 Atl. 1122; *Bond* v. *Pontiac etc. Co.,* 62 Mich. 643.

The question of agency is a preliminary one for the court to determine.

The declarations of an agent are not admissible against his principal, unless they are a part of the *res gestae.* *Barber's Admr.* v. *Bennett,* 62 Vt. 50; 1 Am. & Eng. Enc. (2nd Ed.) 691; *Mason* v. *Gray,* 36 Vt. 308; *Underwood* v. *Hart,* 23 Vt. 120; *Dorrie* v. *Southwork etc. Co.,* 11 Cush. 205; *Baltimore* v. *Lobe,* 90 Md. 310; *Leeds* v. *Alexandria etc. Co.,* 2 Wheat. 380; *Grafton Bank* v. *Woodward,* 5 N. H. 301; 1 Phillips, Ev. 507-516.

To affect the sale, fraudulent representations as to the subject-matter must be made by the seller, or his agent, to the buyer, pending the sale, knowing their falsity, for the purpose of inducing the buyer to purchase, and relied upon by the latter. *Shanks.* v. *Whitney,* 66 Vt. 405; *Hobart* v. *Young,* 63 Vt. 363; *James* v. *Hodsden,* 47 Vt. 127; *Cabot* v. *Christie,* 42 Vt. 121; *Bond* v. *Clark,* 35 Vt. 577; 14 Am. & Eng. Enc. (2nd Ed.) 102.

Parol evidence of intention of the parties in their use of the term "satisfactory demonstration" in the written contract, was inadmissible. *Daggett* v. *Johnson,* 49 Vt. 345; *Bradley* v. *Bently,* 8 Vt. 243; *Conner* v. *Carpenter,* 28 Vt.

237; *Morse* v. *Lowe,* 44 Vt. 561; *Stewards* v. *Town,* 49 Vt. 29; *Benedict* v. *Cox,* 52 Vt. 247.

This error could not be cured by directing the jury to disregard the evidence. *Hall* v. *Jones,* 55 Vt. 297; *State* v. *Meader,* 54 Vt. 126; *Sterling* v. *Sterling,* 41 Vt. 80; *State* v. *Hopkins,* 50 Vt. 316.

Defendant, as matter of law, accepted the automobile, and it was error to submit that question. If, after discovering the fraud, the purchaser continues to use the article and to treat it as his own, he is precluded from a subsequent rescission. *Ward* v. *Marvin,* 78 Vt. 141; *Barrett* v. *Tyler,* 76 Vt. 108; *Downer* v. *Smith,* 32 Vt. 1; *Brown* v. *Nelson,* 66 Vt. 600; *Dennis* v. *Stoughton,* 55 Vt. 371; 24 Am. & Eng. Enc. (2nd Ed.) 1090.

Where the purchaser has full opportunity to examine the article sold, he cannot claim that he was deceived by the seller's false representations. *Slaughter* v. *Gerson,* 13 Wall. 379; *Salem India Rubber Co.* v. *Adams,* 23 Pick. 256; *Brown* v. *Leach,* 107 Mass. 364; *Holst* v. *Stewart,* 161 Mass. 516; *Mamlock* v. *Fairbanks,* 46 Wis. 415.

Damages by way of recoupment, must arise from the contract upon which plaintiff stands. Anticipated profits, prevented by plaintiff's breach of the contract are not within the rule. *Davenport* v. *Hubbard,* 46 Vt. 200; *Hadley* v. *Baxendale,* 9 Exch. 341; 8 Am. & Eng. Enc. (2nd Ed.) 624; *Howard* v. *Stilwell etc. Co.,* 139 U. S. 199; *Morey* v. *King,* 49 Vt. 304; *Weeks* v. *Prescott,* 53 Vt. 73; *Noble* v. *Hand,* 163 Mass. 289; *Bartow* v. *Erie R. Co.,* (N. J.) 62 Atl. 489; *Stern* v. *Rosenheim,* 67 Md. 503; *Barnard* v. *Poor,* 21 Pick. 378; *Union Pac. Ry. Co.* v. *Goodbridge,* 149 U. S. 680; *Brigham* v. *Carlisle,* 78 Ala. 243; *Griffin* v. *Colver,* 16 N. Y. 489; *Barnstein* v. *Meech,* 130 N. Y. 354; *U. S.* v. *Behan,* 110

*U. S.* 338; *Beck* v. *West,* 87 Ala. 213; *Howe Machine Co.* v. *Bryson,* 44 Iowa 159; *Lanahan* v. *Heaver,* 79 Md. 413; *Acme Cycle Co.* v. *Clark,* 157 Ind. 271; *Witherbee* v. *Meyer,* 155 N. Y. 446; *Pittsburgh Gauge Co.* v. *Ashton Valve Co.,* 184 Pa. St. 36; *Squires* v. *W. U. Tel. Co.,* 98 Mass. 232.

*J. W. Redmond* for the defendant.

Agency may be proved by circumstances.   3 Elliot Ev. § 1635; *Isbell* v. *Brinkman,* 70 Ind. 118; *Columbus, etc. R. Co.* v. *Powell,* 40 Ind. 37; *Indiana, etc. Co.* v. *Admanson,* 114 Ind. 282; *Barnett* v. *Gluting,* 3 Ind. App. 415; *Wright* v. *Solomon,* 19 Cal. 64; *Strimfler* v. *Roberts,* 18 Pa. St. 283; *Olcott* v. *Tioga R. Co.,* 27 N. Y. 546.

The contract in question is evidentiary merely.   It was not intended to recite the whole contract.   In that case parol evidence of the omitted portion is admissible.   *Dunnett & Slack* v. *Gibson,* 78 Vt. 439; *Winn* v. *Chamberlin,* 32 Vt. 318.

"It is fraud for a man to tell part of the truth in regard to what he is inquired of, and keep back another part which he knows, if disclosed will prevent the party's dealing with him."   *Chamberlin* v. *Fuller,* 59 Vt. 247; *Graham* v. *Stiles,* 38 Vt. 557; *Mallory* v. *Leach,* 35 Vt. 156.

ROWELL, C. J.   Assumpsit for the price of an automobile sold and delivered as part of a written contract of agency between the parties for the sale of the plaintiff's automobiles by the defendant in the northeastern counties of this State.

The cross-examination of the plaintiff's witness, Karl Grout, as to the contents of the written contract of agency between them and St. Jock & Blodgett, was harmless, as it elicited nothing but the inability of the witness to remember anything about its contents.

The plaintiff's letter of April 8, 1903, if immaterial, appears not to be such as to prejudice them on the question of damages, as claimed, and therefore its admission was not reversible error. Nor was it error to admit the bilateral contract executed by the plaintiffs only, that accompanied that letter, for taken in connection with St. Jock's testimony, it tended to show the contents of said contract between the plaintiffs and St. Jock and Blodgett; and it was material to show what that contract was, as is shown below.

No exception was taken to the admission of secondary evidence of the contents of said last-mentioned contract, but only to the admission of any evidence of its contents, because it was claimed to be immaterial what that contract was, as it appeared that nothing was ever done under it. But that contract became effective between the parties, and was a breach by the plaintiffs of their contract with the defendant here in question, as it assigned a part of the defendant's territory to St. Jock and Blodgett. Hence it was material to show what that contract was, and it is no answer to say that nothing was ever done under it; that objection goes to the damages, not to the right.

The exception for immateriality to allowing St. Jock to testify that in the summer of 1903 the public demanded fusible plugs in steam automobiles, cannot be sustained. The evidence bore upon the value of the automobile in question, especially for demonstrating purposes wherewith to sell others, for which purpose the defendant bought it, as the plaintiffs knew.

So what the plaintiffs told Blodgett at their factory in April, 1903, about the use and purpose of fusible plugs, was evidence against them of their utility and need.

The testimony on the part of the defendant as to what transpired at the plaintiffs' repository in Boston on the 20th of

March, especially when taken with what took place between the defendant and Walker the day before at the automobile show, tended to prove that Walker was the plaintiffs' agent. That testimony was in substance this: The morning of the 20th, Walker went early to the defendant's hotel, and took him and his friend Moore to the repository, and there introduced the defendant to Charles B. Grout, one of the plaintiffs, as a man from Vermont looking for an agency for automobiles. Grout being busy, Walker showed the defendant and Moore a number of Grout machines in the repository, called attention to their nice finish and style, their strength of build, and said they were well adapted to the defendant's section of country. Then the defendant and Moore were taken by some one to ride in one of the cars; and on their return, said plaintiff asked the defendant how he liked the appearance of their cars, and he said, "from what your representative [meaning Walker] has told us, and what I have seen, I think you have some very good cars:" The plaintiff said he thought they had, and pointed out their strength, and said they were better adapted to hilly country than any others, "and seemed to know about the agency business," and "started right in to talk about it." Then the plaintiff, the defendant, and Walker went aside to where the cars were, and talked together a while, and then the plaintiff and the defendant, and perhaps Walker, went into the office, and the contract in question was drawn up and executed. Then Moore, talking with the plaintiff, referred to Walker, either as agent or by name, as having done well in bringing the defendant to plaintiffs' place, and said he thought considerable credit was due to him for it. The said plaintiff himself testified that he knew Walker as a curb broker, but never talked with him till the week of the show, and in their Boston office it might have been, for he was hanging around

there a good deal. He could not remember what was said, except that Walker asked for catalogues, etc.; that he did most of his business with Ham, who ran the office. Neither Ham nor Walker testified. This disposes of all the exceptions based upon the claim of no evidence to prove Walker's agency.

It is said, however, that if Walker was plaintiffs' agent, there is no evidence that his statements were within the scope of his authority. But the testimony that tended to show his agency, also tended to show that his statements were within its scope. And those statements were a part of the *res,* as they related to the very contract here in question. It is not necessary that they should have been simultaneous with the conclusion of the contract, but only that they should have been made during the negotiations that led to the contract, have influenced the defendant in making it, and entered into it as a part thereof; all which the testimony tended to show. *Hobart* v. *Young,* 63 Vt. 363, 369.

The contract in question required payment for the car on delivery and "satisfactory demonstration." The plaintiffs proved what "demonstration" means as understood in the trade. Then the defendant, as tending to show what the parties understood it to mean as used in the contract, proved, under exception, the direct oral statements of one of the plaintiffs, made at the time the contract was executed, to the effect that if the defendant had prospective customers when they sent a man to teach him how to run the car, they would show it up to them, and if he had some prospective customers up in his section, they would help him sell to them; all which, the defendant claimed, the plaintiffs had neglected and refused to do.

The admission of these statements was error, unless the defendant's claims to the contrary, or some of them, are sus-

tainable; for direct oral statements of intention in respect of the subject of a written contract are admissible only when the language used is equivocal, that is, when it is equally applicable in all its parts to more than one external object.   4 Wig. Ev. §§ 2471, 2472; Thayer's Prelim. Treat. Ev., 444; Steph. Dig. Ev., Chase's ed., 230, (7), 231, (8).

Here the words, "satisfactory demonstration," though their trade meaning may be uncertain on their face, are not shown by extrinsic evidence to be equivocal, and therefore the case is not within the exception to the rule that you cannot enlarge a written contract by oral evidence.   *Hart* v. *Hammett*, 18 Vt. 127, illustrates that exception.   There the contract was for the sale of "winter strained lamp oil."   It was proved that these words as generally used in the oil trade applied indifferently to winter strained *sperm* lamp oil and to winter strained *whale* lamp oil, and that *sperm* oil was better than *whale* oil, which was the oil delivered.   In this state of the case, oral evidence was held to be admissible to show that at the time of the execution of the contract the defendant showed to the plaintiff a sample of the oil to be delivered, and told him it was not *sperm* oil.   *New England Granite Works* v. *Bailey*, 69 Vt. 257, is a similar case.   There the contract was for a monument of "white Westerly granite."   The monument erected was of a reddish or chocolate cast.   It was found that there are different varieties of Westerly granite known to the trade as *white* Westerly granite; some of which has a reddish or chocolate tinge when polished or hammered, and some, a grayish-white tinge.   It was held permissible for the defendant to show that at the time the contract was made it was orally agreed by the parties that the latter variety should be used.

*St. Martin* v. *Thrasher,* 40 Vt. 460, is an illustration of the rule itself. There a written contract for dressing stone for a tunnel at so much a·foot provided that "all of the face of the work that shows is to be measured, and none else." The plaintiff gave oral evidence that the words, "face of the work," meant all the cut and dressed surface that showed, whether horizontal or perpendicular; and the defendant gave like evidence that they meant only the perpendicular fronts of the wall. Held, that the defendant could not show what was said between the parties in their oral negotiations before the execution of the contract as to how the measurement should be made and what face measurement meant. *McKeough's Est.* v. *McKeough,* 69 Vt. 41, is to the same effect. There the question was whether the whole or only a part of the testator's premises on the west side of a certain street passed by a devise of his "home place on which I now live." It was held to be a question of construction only, and not of intention, as it would have been had the language applied equally well to each of two parcels.

But the defendant says that the testimony was admissible to meet the plaintiffs' evidence of the meaning of "demonstration" as understood in the trade. But that evidence did not touch the matter of the oral statements objected to, and did not open the door for them. The same kind of evidence was given in *St. Martin* v. *Thrasher,* 40 Vt. 460, and yet direct statements of intention were excluded.

The defendant also says that it was all a closely connected part of a conversation in which the plaintiff made an admissible declaration as to what constitutes "satisfactory demonstration"—an admission of what he understood that expression to mean, and that therefore all he said on the subject at the time was admissible as a part of said declaration. But what

he said was not a part of said declaration, but was the declaration itself, and not admissible.

It is further claimed that the statements were admissible because the document is not dispositive, but only evidentiary. But we think it dispositive. It is signed by both parties, and contains mutual promises. In it the defendant agrees to buy one automobile, and pay so much therefor on delivery and satisfactory demonstration. If he buys four more by such a time "after the one bought this day," the plaintiffs agree to allow him so much commission on the five.

It is further claimed that the statements were harmless, as the court instructed the jury to disregard them, and that the words, "satisfactory demonstration," did not include sending a man around with the defendant to help him sell machines. But their harmlessness does not appear. The case comes clearly within the rule that error in the admission of evidence cannot be cured by instructing the jury to disregard it. *State* v. *Meader,* 54 Vt. 126.

As to defendant's testimony on re-examination, that he should not have purchased an old model machine for a demonstrating car had he known it, it is enough to say that it does not appear but it was made admissible by the cross-examination.

If it was matter of law and not of fact, as claimed, whether the defendant accepted the automobile, it was harmless to submit it to the jury, for it found acceptance, as the case shows by necessary inference, for otherwise the verdict would not have been warranted.

The plaintiffs excepted to submitting to the jury whether they personally or by their agents represented to the defendant that the car they sold him was a 1903 model, but only on the ground that there was no evidence tending to show

such fact. Hence the other grounds now urged under that exception will not be considered. It is not claimed that there is no evidence tending to show that the plaintiffs themselves did not so represent, but only that there is none tending to show that Walker did. But the defendant's testimony tended to show that Walker did, in effect; for he explained to the defendant the use and necessity of a fusible plug as an equipment of a steam automobile, and represented to him that all Grout automobiles were thus equipped, and that the air pump of the plaintiffs' machines was a much better system of generating air than the Stanley system. The plaintiffs' 1903 cars had both of these equipments, but their 1902 cars, of which the defendant's was one, had neither. Thus Walker's representations amounted to saying that the defendant's was a 1903 car.

The charge on the subject of damages "as per defendant's requests" was excepted to, but no ground stated. It was that the evidence tended to show that there was a market for Grout automobiles in certain of defendant's territory, and that at least three might have been sold there with satisfactory demonstration. Plaintiffs claim there was no evidence warranting the charge. Defendant claims the contrary, and that the exception is too general to be available. But it would serve no useful purpose to decide the matter, it is so likely to be changed on another trial.

The motion to set aside the verdict for want of evidence to sustain it was properly overruled.

*Reversed and remanded.*