JOHN R. LYTLE, *Appellant, v.* RICHARD BOND'S ESTATE.

*Agency. Promissory Note. Evidence.*

The common law principle, that an agent is a competent witness, either for or against the principal, to prove his acts done, or contracts made, as agent, and his authority therefor from his principal, is equally applicable to the case of a written contract purporting to be executed by an agent in the name and behalf of the principal, as to a case of a verbal contract.

The main object of Gen. Stat. § 24, ch. 36, providing that no person shall be disqualified as a witness in civil suits, by reason of interest as a party or otherwise, was to *remove,* not to *create,* disqualifications ; and the *proviso,* that when one party is dead or insane, the other shall not testify in his own favor, was intended mainly as a limitation or exception to the enabling clause ; and this limitation or exception applies only to *parties.*

An agent is not a party to a contract made by him in the name and behalf of his principal.

Where a note was signed "Richard Bond, by Stillman Clark," it was *held,* that Clark was a competent witness in an action on said note against Bond's estate, after Bond's decease. Clark being an agent is not in legal sense a party to the note.

The introduction of evidence by one party, that might have been excluded, had the other party objected to it, does not necessarily open the door to the other party to introduce incompetent evidence. But where the evidence introduced is a cir-

cumstance morally tending to render the disputed fact more probable, even if so remote as not to be admissible as legal evidence, the other party has a right to do away with the impression it may create in the minds of the jury, by evidence of the same character and force tending directly to meet and explain it.

Under this rule, the evidence offered by the defendant and excluded, to the effect that for several years previous to the death of Bond, he had been in the habit of doing business with the Battenkill Bank, &c., was held admissible.

Also testimony to show that Bond was a good business man, and accustomed to sign his own name to papers, and to do his own writing, was admissible as bearing on the probability of a statement of a witness in behalf of the plaintiff, that on one occasion Bond called on the witness, a daughter of Clark, to sign his name to a note in his presence, and directed her to sign his name whenever her father wanted her to.

THIS was an appeal from the decree of the probate court accepting the report of commissioners disallowing a claim in behalf of the plaintiff.

The plaintiff claimed to recover the amount of a promissory note for four hundred dollars, which he claimed to have paid as an accommodation indorser for the intestate. Plea, the general issue, and trial by jury, April Term, 1867, BARRETT, J., presiding.

The plaintiff gave in evidence a promissory note, of which the following is a copy :

"SALEM, N. Y., August 2d, 1865.

" $400. Fifteen days after date, I promise to pay to the order of John R. Lytle, four hundred dollars, at the bank of Salem, value received. RICHARD BOND,

Indorsed " JOHN R. LYTLE." By Stillman Clark."

No question was made in the case, but that the plaintiff endorsed the note, and after its maturity paid the amount to said bank. The defence rested upon the ground that the intestate's name was signed to the note without his knowledge, consent or authority.

The plaintiff called as a witness, Stillman Clark, and proposed to show by him, that the intestate had in his lifetime, and several years before his death, given the witness a general authority to sign his name to any notes, and that as to the note in controversy he was specially authorized to sign a note for that amount, and procure the same to be discounted at the Salem bank ; that such special authorization was given him by Bond, a day or two before it was in fact

executed, and that pursuant to such authority, he, as the agent of Bond, on the day of the date of the note, applied to the plaintiff, who was not acquainted with Bond, and requested him to sign Bond's name to the note, and that thereupon, the plaintiff wrote at the bottom of the note the signature " Richard Bond by Stillman Clark," and then wrote his own name on the back of it, as an accommodation indorser for said Bond, and that he, the said Clark, took said note to the bank, and procured the same to be discounted.

The defendant objected to the admission of said Clark as a witness, insisting that he was incompetent, but the court overruled the objection, and permitted him to testify,—to which the defendant excepted.

Said Clark testified in substance as offered, and also testified to other and material facts growing out of his business relations with Bond, and to conversations with him in his lifetime.

He also testified that for several years before Bond's death, he had been in the habit of using Bond's name at the Salem bank, and from time to time, when he did thus use it, he procured the plaintiff, who was a friend of his, to sign Bond's name to the notes, and then endorse them. That he, said Clark, did not write, and could not read writing. That he, Clark, always took up these notes, and that the money obtained on them was used by Clark to buy cattle, which he bought in Bond's name, and which when sold he had one-half the profits on, and Bond the other half. And that Bond, though never at the Salem bank, and without any acquaintance with the plaintiff, knew that Clark was in the habit of using his name.

The plaintiff, in the course of the trial, called as a witness one Muzzy, who testified that on the 3d of May, 1865, he purchased some cattle of Clark, when Bond was present, and that while talking about the time of payment, Bond or Clark, in Bond's presence, said that they wanted to send the money " over the mountain " the forepart of next week to meet a debt there, but nothing was said as to whom the debt was due.

The plaintiff also called one Foskett, who testified that in the forepart of May, 1865, he bought some cattle of Bond and Clark ; that he asked when they wanted the pay. Bond said he wanted it the next week to send over the mountain to pay a bank note. That he

didn't say Salem bank.   It appeared that Bond resided in Jamaica, which is on the east side of the mountain.

The plaintiff also called one Mary Clark, who testified that she "is a daughter of Stillman Clark. · That on one occasion, several years before Bond's death, said Bond came to our house, and I signed his name to a note ; I asked if I should sign his name, and he said I could.   I asked him, how when he was not here, should I sign?   He said I could whenever father wanted me to."

After the above witness had thus testified, the defendant offered to show that Bond was a good business man, and accustomed to sign his own name to papers, and to do his own writing.   To this the plaintiff objected, and the court excluded the same,—to which the defendant excepted.

The defendant also offered to show, that for years previous to his death, Bond had been in the habit of doing business with the Battenkill bank, located at Manchester, and that the witness had signed notes with him at that bank.

To this the plaintiff objected, and the court excluded it,—to which the defendant excepted.

Under a charge, to which no exception was taken, the jury returned a verdict for the plaintiff.

*Chas. N. Davenport*, for the defendant.

*H. H. Wheeler* and *H. E. Stoughton*, for the plaintiff.

The opinion of the court was delivered by

PECK, J.   The note upon which the plaintiff claims to recover is payable to his own order at the Bank of Salem, and purports to be signed, "Richard Bond, by Stillman Clark."   The defence in behalf of Richard Bond's estate, is that the note was executed without the knowledge, consent or authority of the decedent.   The case shows that no question was made but that the plaintiff endorsed the note, and after its maturity paid it to the bank.   The plaintiff, under objection, was permitted to show by Clark that he, by authority from Bond, and as his agent, caused the note to be executed as stated in

the case, and procured the plaintiff to endorse it for the accommodation of Bond, and then procured it to be discounted at the bank. The question is whether Clark was a competent witness for this purpose. It is insisted that Clark is interested in sustaining his authority as such agent, and thereby throwing the liability upon his alleged principal, which otherwise might rest on himself, and that he is the real party and incompetent in this action to testify under the statute, which excludes one party after the decease of the other. There is nothing peculiar in this case which can take it out of the common law principle, that an agent is a competent witness, either for or against the principal, to prove his acts done and contracts made, as agent, and his authority therefor from the principal. He is competent to prove his agency. The rule is equally applicable to the case of a written contract purporting to be executed by an agent in the name and behalf of his principal, as to a case of a verbal contract. An instance of the application of the rule to a case like this, is found in *Rice* v. *Gove*, 22 Pick. 158, which was decided after full argument and review of authorities. The very point in that case was, whether the assumed agent was a competent witness against the maker, to prove his authority to execute the note.

But it is still insisted that Clark is rendered incompetent by the *proviso* to sec. 24, chap. 36; Gen. Stat. The main object of that section providing that no person shall be disqualified as a witness in civil suits, by reason of interest as a party or otherwise, was to *remove*, not to *create* disqualifications; and the *proviso*, that when one party is dead or insane, the other shall not testify in his own favor, was intended mainly as a limitation or exception to the enabling clause; and if a case may arise where the effect of the *proviso* would be to exclude a witness who would have been competent without the aid of this statute, it clearly is not this case. The statute removing the incompetency arising from interest, embraces two classes, those interested as *parties*, and those *otherwise interested* in the event of the suit. But the limitation or exception in the *proviso* in case of the death or insanity of one of the parties, applies only to *parties*, it does not exclude persons interested in the event of the suit, " unless they are parties to the contract or cause of action in issue

and on trial." Clark is not in any legal sense such party. An agent is not a party to a contract made by him in the name and behalf of his principal. Clark is neither a party to the contract or cause of action, nor a party to the suit, and was a competent witness.

Did the court err in excluding the evidence offered by the defendant? This question depends on the state of the evidence when this evidence was offered and rejected. The fact in dispute was whether Clark had authority to sign this note. The testimony of Clark tended to show a special authority to sign, as he did, this particular note. But this being controverted, the plaintiff went further, and in order to add to the force of Clark's testimony, as to his authority to sign this particular note, Clark testified to a general authority to sign notes in behalf of Bond, and that he for several years prior to the date of this note, had been in the habit of executing notes like this, in the name of Bond, and after procuring the plaintiff to endorse them, raising money on them at the Salem bank, and using the money in Bond's business, buying cattle, in the profits of which Clark was to share with Bond, that although Bond was never at the bank, and he, Clark, always took up the notes, yet Bond knew he was in the habit of thus using his name. The plaintiff introduced one Muzzy, who testified that May 3d, 1865, he bought some cattle of Clark when Bond was present, and that Bond or Clark in Bond's presence, in telling of the time of payment, said they wanted to send the money over the mountain the fore part of the next week to meet a debt there. The plaintiff also introduced one Foskett, who testified that in the fore part of May, 1865, he bought some cattle of Bond and Clark, that he asked when they wanted the pay, and Bond said he wanted it the next week to send over the mountain to pay a bank note. It appears by the case that the Salem bank, in reference to Bond's residence, was *over the mountain.* This evidence could have no tendency to show that the bank debt over the mountain referred to, was this note, for this note was not executed till some three months after. But in the absense of any evidence that Bond ever had any other debts over the mountain, the jury might infer that the bank debts referred to in that conversation were some of the notes that Clark had testified he had been in the habit of executing

there in Bond's name; and thus the evidence would tend to show that Bond knew Clark was using his name at that bank. Whether this inference is so remote and speculative as to render this evidence on the part of the plaintiff incompetent, if it had been objected to, is not material; for being in the case it would be likely to influence the jury in that direction. The introduction of evidence by one party, that might have been excluded had the other party objected to it, does not necessarily open the door to the other party to introduce incompetent evidence. But when the evidence introduced is a circumstance morally tending to render the disputed fact more probable, even if so remote as not to be admissible as legal evidence, the other party has a right to do away with the impression it may create in the minds of the jury, by evidence of the same character, and force tending directly to meet and explain it. The evidence offered by the defendant and excluded, to the effect that for several years previous to the death of Bond, he had been in the habit of doing business with the Battenkill bank, at Manchester, and had notes at that bank signed by him and the witness, the Battenkill bank being over the mountain, would tend to render it just as probable that the declarations as to the debt *over the mountain* testified to by the plaintiff's witnesses, referred to these notes at the Battenkill bank, as to the notes at the Salem bank testified to by Clark. It is insisted that in order to render this evidence admissible, the offer ought to have gone to the extent of showing that Bond had a note at the Battenkill bank at the time the declarations proved on the part of the plaintiff were made. It is true that would have added to its force. But in this respect the evidence offered by the defendant rests on the same ground as that on the other side, to meet which it was offered; for the evidence on the part of the plaintiff did not show that there were any notes at the Salem bank, at the time the conversation which the plaintiff proved took place, except as it might be inferred from the testimony of Clark, that he had been in the practice of getting such notes discounted there. We think also that the other evidence offered by the defendant and rejected by the court, should have been admitted. The plaintiff introduced a daughter of Clark, whose testimony was to the effect that on one occasion, several years before

Bond's death, he came to her father's and she signed his name to a note, and asked him as to whether she should sign his name when he was not there, and that he told her to sign his name whenever her father wanted her to. The defendant had a right to go to the jury upon the question as to the truth of her testimony ; and therefore had a right to show such facts as would tend to show the story a strange or improbable one. We think the fact offered to be shown by the defendant, that Bond was a good business man and accustomed to sign his own name to papers, and to do his own writing, was a circumstance the jury would have a right to consider as bearing on the probability of Bond's calling on the witness to sign his name in his presence, and was not too remote for consideration in judging of the credibility of the witness, and the accuracy of her testimony. It may have been entitled to but little weight, but the defendant was entitled to the benefit of it.

Judgment reversed and new trial granted.