# C. E. PERRY, EXECUTOR, v. JOHN M. MOORE.

## May Term, 1894.

*Contradiction of witness. When party introducing inadmissible testimony cannot object to similar testimony. Error. Evidence.*

1. A party cannot contradict an adverse witness upon collateral matters drawn out on cross examination.

2. If one party introduces inadmissible testimony without objection, which morally tends to support the issue on his part, the other party may meet and explain it by similar testimony.

3. If the contestant has introduced in evidence conversations of the testatrix both before and after the execution of the will as tending to show her mental unsoundness and undue influence, and the proponent thereupon puts in evidence conversations of the testatrix after the execution of the will in rebuttal, it must appear that the latter conversations were not the same as those covered by the contestant's testimony or error cannot be affirmed.

4. The testatrix bequeathed her property to certain churches. Her husband, who died a few months before she did, had some years before willed his property to the same churches. Nearly all the estate of the testatrix was and for a long time had been money deposited in a bank. *Held*, that an entry upon the bank book directing the payment of the money due on it to her husband was admissible in rebuttal in connection with testimony that the testatrix said in speaking about the book that she and her husband had planned to leave their money to the churches.

Appeal from a decree of the probate court for the district of Brattleboro, admitting to probate the will of Almira Timson. Pleas, that the testatrix was of unsound mind, and undue

influence. Trial by jury at September term, 1893, Windham county, THOMPSON, J., presiding. Verdict sustaining the will. The contestant excepts.

*Haskins & Stoddard* for the contestants.

The testator's declarations made after the execution of the will are not admissible in support of it. *Robinson* v. *Hutchinson*, 26 Vt. 38; *Richardson* v. *Richardson*, 35 Vt. 238.

*Waterman, Martin & Hitt* for the proponent.

The testimony of Mrs. Merrifield was admissible. It tended to show that the testatrix knew what she had done and that she had devised her property as she always intended to. *Re Emma C. Buckman's Will*, 64 Vt. 313; *Brown* v. *Welch*, 38 Vt. 241; *Bement* v. *Stacy*, 48 Vt. 163; *Davis* v. *Savings Bank*, 48 Vt. 532.

ROWELL, J. The question put to the witness Perry on cross-examination called for hearsay and irrelevant testimony. It is claimed, however, that it was proper for the purpose of laying a foundation for discrediting the witness by contradicting him by testimony to be thereafter adduced by the cross-examining party. But when a witness is cross-examined on collateral matter it is not the right of the examining party to contradict him in respect of such matter.

The contestant introduced evidence of conversations and acts of the testatrix both before and after the will was made, tending to show her mental unsoundness and undue influence on the part of her husband. In rebuttal, and as bearing on the question of undue influence, the proponent was allowed to show by Mrs. Merrifield, conversations that she had with the testatrix after the will was made, but at times, and for aught that appears on occasions, covered and re-

ferred to by the contestant's testimony on the same subject. It is claimed that this was error, for that the declarations of the testatrix, made after the execution of the will, were inadmissible to show the want of undue influence, and were not made admissible by the fact that the contestant introduced such testimony without objection. But that is not so. The rule is, that when one party introduces irrelevant testimony without objection that morally tends to render a claimed fact more probable, the other party has a right to do away with its effect if he can by testimony of the same character tending to meet and explain it. *Lytle* v. *Bond's Estate*, 40 Vt. 624. This rule is applicable here, especially as it does not appear that the conversations to which Mrs. Merrifield testified were not conversations to which some of the contestant's witnesses testified. This view renders it unnecessary to decide as to the legal relevancy of such declarations.

Most of the testatrix's property consisted of money that had long been deposited in a savings bank. As early as April 5, 1871, she entered in her deposit-book that in the event of her death the book was to become the property of her husband. Again in February, 1879, she made an entry therein, directing the bank to pay to the order of her husband all money that had been or should be deposited and become due on the book, together with the interest thereon. The proponent offered this book in evidence in rebuttal, and it was admitted in connection with Mrs. Merrifield's testimony, on the question of undue influence, and to show that the matter of the disposition of the testatrix's property had been agreed upon by her and her husband.. Mrs. Merrifield had testified that she identified this book as the one showed to her at some of her talks with the testatrix, and that she had heard her say that she and her husband had planned that the money should go the churches when they got through with it. Her husband died a few months before

she did, leaving a will that gave the bulk of his property to the same churches to which she willed hers.

This book was admissible on the question of undue influence, for those entries showed a purpose to give her property, not to her mother nor her sister, but to her husband; and the willing of it to the churches to which he had years before willed his, and to which, as the case shows, he desired her to will hers, was directly in line with her purpose as expressed in the book, and which had long been cherished. That purpose was in effect carried out by willing her property as she did. It went where his went, and where he wanted hers to go, and where, manifestly, it would have gone had her purposed gift to him been executed to the point of taking effect.

*Judgment affirmed and ordered to be certified to the Probate Court.*

Start, J., being engaged in County Court, did not sit.