OLIVER H. JENNESS *v.* WALTER SIMPSON.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 9, 1911.

*Judgment—Time for Rendition—Bill of Exceptions—Time to File—Husband and Wife—Criminal Conversation—Measure of Damages—Alienation of Affections—Gist of Action—Evidence—Sufficiency—Contracts for Benefit of Third Person—Similar Evidence by Adverse Party—Effect—Foreign Laws—Manner of Proof—Question for Jury—Release—Consideration—Failure—Evidence—Attorney and Client—Privileged Communications—Preliminary Question for Court—Contracts—Illegality—Ratification—Rights of Parties—Fraud—Insufficient Performance — Waiver—Estoppel—Questions Reviewable—Instructions—Sufficiency—Issues.*

Where the county court adjourned July 9, and on July 8 a motion to set aside a verdict because excessive was disposed of by an order that, if defendant pay the clerk a designated sum of money within sixty days from the adjournment of the term, plaintiff should then remit to that sum, but if defendant failed so to pay, judgment should be entered on the verdict, defendant had the whole of the sixtieth day wherein to comply with the terms of the order, and a judgment on the verdict, entered against defendant on September 7 following, because of his failure theretofore so to pay, was irregular, though not void, and would be set aside if he had excepted thereto.

Though the judgment contemplated by the order was rendered at the term, its validity was suspended and its character was indeterminate during the sixty days, and, therefore, it was within the spirit of P. S. 1354, 1356, authorizing the county court to enter judgments in vacation in cases fully heard during the term, and providing that the time for filing exceptions shall be computed from the day of filing such judgment order, which in this case means the day on which the judgment order became finally effective, and so defendant's bill of the exceptions allowed him during the trial was seasonably filed on September 8.

The measure of damages for debauching plaintiff's wife and alienating her affections is the value of her services to him, her conjugal aid, society, affection, and comfort, less the expense necessary to fulfill his obligation to clothe, support, cherish, and care for her.

In an action by a husband for debauching his wife and alienating her affections, wherein there was no evidence that she was contributing from her separate property toward the support of the family, or otherwise to the relief of the husband's burden, or that there was a reasonable expectation that she would do so, the fact that she had property of her own had no bearing on the measure of damages, and so it was error to allow plaintiff's counsel to state that fact to the jury in his opening statement, and to elicit it in cross-examination of defendant's witness.

Where the objection to evidence was general, and the purpose for which it was admitted does not appear of record, its admission cannot be held to be error, if in any circumstances, though not disclosed by the record, it would be admissible.

One who seeks to take the benefit of a contract made by a third person in his behalf must take it subject to all legal defences, and the third person's fraud in procuring the contract is the fraud of such beneficiary.

In an action by a husband for debauching his wife and alienating her affections, where defendant, who married the wife after she had obtained a divorce, relied on a contract between the husband and wife stipulating for a divorce at her suit and releasing defendant from liability to the husband, and the husband claimed that the contract was void because procured by the fraud of the wife, he was properly allowed to testify to conversations had by him with her, in the absence of defendant, indicating fraud on her part in inducing the contract and in procuring a divorce.

Error to be available must affirmatively appear of record, and so where the record does not affirmatively show that it discloses all of a witness's cross-examination, this Court will assume that there was cross-examination, not disclosed by the record, which justified a challenged redirect examination.

The gist of an action either for alienating the affections of plaintiff's wife or for criminal conversations with her, is the loss of *consortium*.

In an action by a husband for debauching his wife and alienating her affections, evidence that before the husband and wife separated he treated her with intolerable severity is admissible only in mitigation of damages, and will not bar the action even though that treatment was such as wholly to destroy her affection for him.

An objection to the form of a question asked a witness does not reserve the question of the admissibility of the evidence thereby elicited.

An objection to the form of a question asked a witness is addressed to the discretion of the trial court, and its disposition thereof is not reviewable.

Where depositions are not a part of the record, and are not furnished this

Court, it will presume that the lower court correctly determined their contents.

Where a party had introduced expert testimony that certain words in a written contract executed in a sister state had a designated meaning and effect, the other party was properly allowed to meet that by like testimony to the contrary.

Though the determination of a foreign law put in issue by the pleadings is a question of fact for the jury, the construction of such contract is for the court; and experts called to prove the foreign law may state only the abstract fact of what that law was, it being then for the court by proper instructions to apply that law, as the jury may determine it, to the contract in question.

The error in allowing an expert, called to prove a foreign law as bearing on the validity of a contract executed thereunder, to apply that law to the contract instead of merely stating what that law was, cannot be deemed harmless where the verdict is general, because it does not appear what the foreign law was, as that is a question for the jury.

One who seeks to take the benefit of a contract made by a third person in his behalf must take it subject to all legal defences, including its unperformed conditions precedent.

In an action by a husband for debauching his wife and alienating her affections, where defendant relied on a contract between the husband and wife, made in a sister state, stipulating for a conveyance of her real estate and releasing defendant from liability to the husband, and the evidence tended to show the wife's failure to make the required conveyance, and that under the law of the sister state such failure would have amounted to a repudiation of the contract, plaintiff was properly allowed to show that, through the wife's attorney in the sister state, she was requested to execute the required conveyance.

The error, if any, in admitting evidence of more of a transaction than was required to prove that a request was made thereby, was harmless.

An excepting party will be confined in this Court to the objection he stated below.

Whether a communication between attorney and client is privileged is a preliminary question for the trial court, and its action thereon is not reviewable.

It was within the discretion of the trial court to refuse to hear testimony, offered at the close of all the evidence, to show that a party had offered to forgive a witness a debt if he would testify as had another witness, and where the court considered that the witness had shown himself too unreliable to warrant going into the subject-matter covered by the offers, its discretion was not abused.

Where the charge as given shows that the court intended and attempted to comply with a party's requested instructions, if such party believes that the charge does not fully comply with his requests, he should point out below wherein such failure consists, and where he omitted

9

to do so, his exceptions to the court's failure to comply with his requests are not available.

Where a transaction is contrary to good faith, and the fraud affects individual interests only, a ratification is allowed; but where the fraud is of such a character as to amount to a crime or other wrong involving public interests, a ratification is not allowed.

In an action by a husband for debauching his wife and alienating her affections, where defendant relies on a contract between the husband and wife containing a stipulation releasing defendant from liability to the husband, the latter may rely on the invalidity of the contract, though he still holds the avails thereof, as the illegality is affected with a public interest.

A contract between husband and wife, executed after their separation, and stipulating that she should pay a specified sum of money to him, a part of which was to be paid immediately upon the granting of a divorce to the wife in a sister state, and that she whould execute a deed of her real estate, and reciting that, in consideration of her promises, he acknowledges full satisfaction of any differences in law or equity existing between him and her, and agrees that no steps shall be taken in law or equity in any form against her or a man with whom she left the husband's home, and which was induced by the wife's fraud in representing to the husband that her conduct with that man had not been criminal, was void because the fraud was of such a character as to involve public interests, and, hence, the husband may rely on its invalidity, though he holds the avails thereof.

The law leaves the parties to an illegal contract where it finds them, and will not enforce it either in support of an action or as a defence, but will allow either party thereto to prove its true character in bar either of an action or a defence.

Fraud inducing a contract and the insufficient performance thereof may be waived, and if waived, are not available as a defence to the contract.

In an action by a husband for debauching his wife and alienating her affections, where defendant, who married the wife after she had obtained a divorce, on the validity of which he relied in defence, and also relied on a contract between the husband and wife stipulating for a divorce at her suit and releasing defendant from liability to the husband, and the husband's evidence tended to show that the divorce was void because of fraud perpetrated by the wife on the court that granted it, and that the contract was void because induced by her fraud, and there was no evidence that the husband participated in the wife's fraud on the court that granted the divorce, the court properly ignored defendant's requested instruction based on the theory that plaintiff participated in that fraud.

Where a contract between husband and wife stipulating for a divorce at her suit and that a third person is released from liability to the husband is void, the fact that the third person furnished a part of the money

paid by the wife to the husband under the terms of the contract does not enlarge the third person's rights thereunder, nor enable him to rely thereon in defence of an action by the husband for the alienation of the wife's affections.

In an action by a husband for debauching his wife and alienating her affections, where defendant, who married the wife after she obtained a divorce, relied on a contract between the husband and the wife stipulating for a divorce at her suit and releasing defendant from liability to the husband, the refusal to charge that if the divorce was void because of any collusive stipulation in the contract, and plaintiff was a party to that stipulation and the wife and defendant intermarried in reliance on the validity of the divorce, plaintiff could not recover for anything that occurred after the granting of the divorce, was properly refused, because there could be no estoppel in defendant's favor unless he knew the contents of the contract and relied on it, and, if he knew of its contents, he was required to judge of its validity, and in marrying the wife in reliance on the validity of the contract he took the chance of the contract being illegal.

In an action by a husband for debauching his wife and alienating her affections, where defendant relied on a contract between the husband and wife releasing defendant from liability to the husband and requiring the wife to execute a conveyance of her real estate, and the evidence showed that the deed executed by her was not such as the contract required, the court properly refused to charge that the deed that she did execute, was not void, but was such a deed as equity would perfect as a valid conveyance.

The refusal to grant instructions announcing the absence of evidence to show designated facts will not be considered where the evidence is not before the Supreme Court.

In an action by a husband for debauching his wife and alienating her affections, he is not limited to the recovery of damages measured by the loss of *consortium* to the date of the action, but he is entitled to damages measured by the permanent loss of his wife's aid, comfort, and companionship.

CASE for debauching the plaintiff's wife and alienating her affections. Plea, the general issue with notice thereunder. Trial by jury at the June Term, 1909, Caledonia County, *Miles*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

Defendant's ninth, tenth, thirteenth, fifteenth, and sixteenth requests to charge were as follows:

9. If the jury find that the divorce in question is void because a fraud was perpetrated on the South Dakota court

in respect to Mrs. Simpson being a *bona fide* resident of that state within the meaning and requirements of its law, and also find that plaintiff was a party to that fraud, and that Mrs. Simpson and defendant intermarried in reliance on the validity of that divorce, then plaintiff can recover no damage for anything that transpired after the granting of said divorce.

10. If the jury find that the divorce in question is void because of any collusive stipulation in the contract in question, and the subsequent consummation of that stipulation, and find that plaintiff was a party to such stipulation, and its fulfilment, and that Mrs. Simpson and defendant intermarried in reliance on the validity of said divorce, then plaintiff can recover no damages for anything that occurred after the granting of said divorce.

13. The deed in question is not "void" in the sense that it is worthless, but, on the contrary, under the evidence in this case, is such a deed as will be perfected in a court of equity as a valid conveyance. See *Dietrich* v. *Hutchinson*, 81 Vt. 161.

15. There is no evidence in this case tending to show the commission of adultery at Sioux Falls, South Dakota, by defendant and Mrs. Simpson.

16. There is no evidence in this case tending to show the commission of adultery by this defendant with Mrs. Simpson between the execution of the contract in question and the granting of the divorce in controversy.

*J. W. Redmond* and *W. W. Reirden*, for the defendant.

*Howe & Hovey* for the plaintiff.

The court properly allowed evidence of the financial condition of plaintiff's wife, as bearing on the question of damages. *Matheis* v. *Mazet*, 164 Pa. St. 580; *Peters* v. *Lake*, 66 Ill. 206.

POWERS, J. This is an action on the case for alienation and criminal conversation. The plea is the general issue with notice of special matter, which includes a release of the alleged cause of action. A trial by jury having resulted in a verdict for the plaintiff, the defendant moved that the same be set aside

on the ground (among others) that it was excessive. This motion was disposed of by an order which provided that if the defendant paid to the clerk a certain sum within a time specified, the plaintiff should remit to that sum or the verdict should be set aside, but if the defendant failed to pay said sum within the time limited, judgment on the verdict should be entered. The time allowed in which to comply with this order was sixty days from the rising of court. To this order the defendant took no exception. The term adjourned July 9, 1909. On September 7th, the defendant having neglected to make payment as required, the clerk entered on the docket "Judgment on verdict pursuant to order filed July 8th."

Whether the defendant did or did not comply or intend to comply with the requirements of the order, he had the full term of sixty days in which to do so. He had the whole of the sixtieth day and any judgment entered on that day was violative of the terms of the order and premature. Such a judgment is irregular, though not void, and will be reversed or set aside. *Nave* v. *Todd*, 83 Mo. 601; *Marshall & Ilsley Bank* v. *Milwaukee Worsted Mills*, 84 Wis. 23; *Salter* v. *Hilgen*, 40 Wis. 363; *Teat* v. *Cocke*, 42 Ala. 336. But the defendant has no exception to the judgment, so there is nothing, so far as that is concerned, upon which this Court can act.

Numerous exceptions were allowed the defendant during trial, however, and a bill of these was filed September 8,—the plaintiff protesting. These exceptions the plaintiff moves to dismiss on the ground that they were not seasonably filed. He insists that, notwithstanding the sixty days provided for in the order, the exceptions should have been filed within thirty days from the adjournment of the term, agreeably to the provisions of P. S. 1981. The defendant replies that the judgment was rendered under the provisions of P. S. 1354, and that the time for filing exceptions is to be computed, under P. S. 1356, from the expiration of the sixty days.

*Hall* v. *Simpson*, 63 Vt. 601, was a case tried at a June Term, and, by agreement, left with the court for judgment. Judgment was rendered in the following August. It is said in the opinion of the Court that it was not claimed but that the term was to be treated as ending on the day judgment was rendered, and

that "in this view, the bill of exceptions was to be signed by the presiding judge, and be filed with the clerk within thirty days from that date." But when *Mead* v. *Moretown*, 72 Vt. 323, came up under similar circumstances, it was held that the term was not extended for the purpose of filing exceptions, and that they should have been filed within thirty days from the rising of court. It was said that the case was not in conflict with *Hall* v. *Simpson*, because that case involved only a question of amendment of a statement of facts after the time of filing the same had expired. We need not stop to examine these cases to see whether or not they are in entire accord, for while *Mead* v. *Moretown* was pending, No. 35, Acts of 1898, was passed, authorizing the county court to enter judgment in vacation in cases fully heard during the term—P. S. 1354— and providing, among other things, that the time for filing exceptions should be computed from the day on which such judgment order is filed in the county clerk's office,—P. S. 1356. It is apparent that the case in hand does not come within the letter of this act: the judgment here was rendered at the term; its validity was suspended and its character was indeterminate during the sixty days; but so far as judicial action was concerned, it was complete when the court adjourned. The judgment order was filed at the term, and if we are to follow the strict letter of P. S. 1356, the time for filing exceptions then began to run. But we do not think we should follow the letter of the statute. The case comes within its spirit, and should be controlled by it. The case was fully heard at the term, and though in one view the judgment was then rendered, to all intents and purposes it was not rendered until entered. Until the sixty days had run, it was entirely uncertain what the judgment would be, and it was equally uncertain that a judgment would *ever* be; for in one contingency the verdict was to be set aside and a new trial ordered. The provision for computing the time of filing exceptions may well be taken in a case like this to mean the time when the judgment order becomes finally effective,—when all contingencies have passed so that the clerk may know what judgment to enter, and when, in compliance with the order, he does enter it. So we treat the situation the same as it would be if the case had been left "with the court" and judgment rendered at the time

it was entered, and *overrule the motion to dismiss the exceptions.*

The plaintiff and his wife, Eliza, were married in 1876 and lived in the same neighborhood and on friendly terms with the defendant in Sheffield, Vt., on a farm belonging to Eliza, until about the first of June, 1906, when the defendant and Eliza left Sheffield and together went to Sioux Falls, So. Dakota. They remained there until January 14, 1907, when Eliza obtained a divorce from the plaintiff and on the same day married the defendant, with whom she has since lived at Stanstead, P. Q. Sometime in September, 1906, the plaintiff located his wife at Sioux Falls, and with one Norton whom he employed to assist him, he at once went there. He found his wife and had several interviews with her. Finally, on September 24, 1906, at Sioux Falls, the plaintiff entered into a written contract of which the following is a copy:—

· Know all men by these presents that this agreement made this 24th day of September, 1906, between Eliza J. Jenness, party of the first part, and Oliver H. Jenness, party of the second part.

Witnesseth, That the party of the first part agrees to give the party of the second part the sum of Three Thousand ($3,000) Dollars, One Thousand Dollars in cash, the receipt of which is hereby acknowledged, and the balance, Two Thousand Dollars, immediately upon the granting of a divorce by the court in South Dakota, in such county and judicial circuit as the same may be brought, and also to furnish a deed granting unto Perley H. Jenness, of St. Johnsbury, Vermont, all the right, title and interest of party of the first part in and to a certain farm known as the Cutler place where the parties to this contract formerly resided and where Oliver H. Jenness now resides and which he is now occupying, meaning and intending hereby to give, grant, and convey all her right, title and interest in and to all lands in the Town of Sheffield, County of Caledonia, in the State of Vermont.

In consideration of the same the party of the second part hereby acknowledges full satisfaction of any and all differences in law or in equity existing between him and the party of the first part and one Walter Simpson, and hereby agrees that this contract is made with the express understanding that

no steps shall be taken in law or in equity in any form against the party of the first part or the said Walter Simpson.

Party of the second part further agrees, and does hereby appoint Tore Teigen, an attorney at law in the city of Sioux Falls, South Dakota, to appear and act as his attorney in any suit arising in this state between the parties to this contract and hereby empowers and authorizes the said Tore Teigen to appear and enter into any agreement and stipulation as to the time and place of trial, the services of said Teigen to be paid by the said party of the first part.

The said party of the second part further agrees that in case action is brought by the party of the first part against the party of the second part he will enter an appearance in writing through his said attorney so designated as aforesaid, and will not resist and oppose the granting of the said divorce if petition and application be brought.

And it is hereby understood and agreed and covenanted that this agreement made and entered into this day between the said parties is in full settlement and satisfaction of any and all differences between them.

IN WITNESS WHEREOF, The parties hereto have hereunto set their hands and seals the day and year first above written.

(Signed)

ELIZA J. JENNESS     (Seal)
OLIVER H. JENNESS     (Seal)

Signed, sealed and delivered in the presence of :

E. A. NORTON.
W. G. PORTER.

The $1000 was paid by Eliza to the plaintiff pursuant to this contract; she also placed the $2000 and a quit-claim deed of the farm in the bank at Sioux Falls, in escrow, as required. This deed, when executed, was in all respects satisfactory to the plaintiff, but later he objected to it because it was the sole deed of Eliza and insufficient to convey the title.

She brought a petition for divorce during the month of September in the courts of South Dakota, the plaintiff appeared by attorney, and the divorce was grant d as above stated.

The deed and the $2000 were promptly forwarded to the plaintiff, who received the same and after signing the deed placed it on record in the town clerk's office in Sheffield. The son, Perley, entered into possession of the farm under this deed, and without a new consideration, conveyed the same to the plaintiff, who has ever since remained in uninterrupted and unquestioned possession. The plaintiff's evidence tended to show that when the contract was executed, one Porter, who was counsel for Eliza, pretended to read it over to him, but that he omitted to read that part which related to Simpson. That in fact, he made no settlement with Simpson and did not know that his name was in the contract, and did not know that he furnished any of the money he was to receive. The defendant's evidence contradicted this and tended to show that the defendant furnished $1500 of the money and that the plaintiff knew it.

The plaintiff's evidence further tended to show that up to the time his wife left Sheffield, he had no suspicion of anything wrong between her and the defendant; that at the time the contract was executed she told him she had not been guilty of any improper conduct with the defendant, and that he believed this statement; that she also told him that she did not care for the defendant and should not marry him, that she might stay and get a divorce in South Dakota, and might not, but that in any event, she should immediately return east, but that she was ashamed to meet her old friends. The plaintiff's evidence also tended to show that Eliza was not a *bona fide* resident of South Dakota, and that for this reason the courts of that state were without jurisdiction in the divorce proceedings, that under the laws of South Dakota, the contract could be utterly repudiated by the plaintiff if Eliza failed to furnish the deed called for, and that it would be wholly void under the following conditions: If it was obtained by any fraud practiced upon the plaintiff by Eliza or her attorney; if she and the defendant had previously been guilty of adultery; if it contemplated the suppression of criminal proceedings; and if it was collusive within the meaning of the code of that state.

The defendant's evidence tended to show that he went to South Dakota with Eliza merely to guide and assist her; that for many years the plaintiff had treated her with intolerable severity;

that his treatment of her became so unbearable that she went away to escape it; that the farm and nearly all the property at Sheffield came to her from her relatives; that no fraud or deceit was practiced upon the plaintiff at Sioux Falls; that the plaintiff knew that he was releasing the defendant when he signed the contract; that he said that Eliza might get a divorce and marry the defendant or anyone else she pleased; and that by the laws of South Dakota said contract was legal and binding and a complete bar to this action.

In his opening statement, counsel for the plaintiff was allowed, subject to exception, to state to the jury that shortly before the plaintiff's wife left him, she had inherited $50,000 from an uncle; that $10,000 had been paid to her in cash, and that the balance was being held in trust for her for the term of fifteen years; that at the end of this term she was to receive the balance, and that during the term she was being paid four per cent interest thereon. The plaintiff was also allowed, subject to exception, to call out these facts on cross-examination of Eliza when she was on the stand as a witness for the defendant. This property was the sole and separate estate of Eliza. The plaintiff had no interest in or control over it. He could derive no benefit from it save only such as he might receive through her generosity. The measure of his damages in this action was the value of her services, her conjugal aid, society, affection and comfort, less a sum represented by his obligation to clothe, support, cherish and care for her. *Rudd* v. *Rounds*, 64 Vt. 432. In the absence of evidence that she was contributing from this fund toward the support of the family or otherwise to the relief of the husband's burden, or that there was a reasonable expectation that she would do so, the fact that she had property of her own did not and could not affect the amount of the plaintiff's recovery. It is no answer in this case that this money furnished a motive or incentive to the defendant, for it does not appear that he knew about it. The character of the information so brought to the attention of the jury was prejudicial and harmful. The plaintiff's only argument in behalf of the rulings is that evidence of these facts became material during the course of the trial; but he does not point out in the record when, where

or how it became material, and we therefore assume that he is unable to do so.

The plaintiff was allowed to testify to a conversation which he had with his wife at Sioux Falls, the defendant not being present, and the defendant excepted. He testified that at this interview he tried to have the woman return to Vermont with him; that she told him among other things that she might stay there and get a divorce, and that she might not; but if she did, she should return home as soon as she got the bill; that there was nothing improper between herself and the defendant; that she did not care for the defendant and should not marry him if she obtained a divorce. All this, the plaintiff said he believed. The objection to this evidence was general; the purpose for which it was admitted does not appear. So we cannot hold its admission to be error, if in any circumstances, though not disclosed by the record, it would be admissible. *Tenney* v. *Harvey*, 63 Vt. 520. Certainly the admission of all of it cannot be justified under the *res gestae* doctrine. *Rudd* v. *Rounds*, 64 Vt. 439, does not go far enough. This conversation took place in September long after Eliza left her husband. Some of it was mere narrative, some related to her future plans, some pertained to her feelings toward her children,—largely hearsay so far as this defendant was concerned. But the plaintiff's evidence tended to show that if the release in the contract was obtained by fraud, it would be void. So on that issue the defendant 's relation to the woman's statements would be different. For when he seeks to take the benefit of this contract made by the woman in his behalf, he must take it subject to all legal defences. Her fraud in its procurement would be his fraud. Williston's Pollock Cont. 271. On that issue, then, in view of the testimony of the legal expert, her representations were admissible. And this is also the case with so much of her statements as tended to show lack of legal residence in South Dakota. The defendant sought to avail himself of the benefit which the divorce afforded him. So her acts and sayings which have a legal tendency to prove a fraud on the Dakota court are admissible here.

The defendant cross-examined the plaintiff at some length and especially concerning the negotiations which finally re-

sulted in the execution of the written contract. Thereupon, in re-direct examination and subject to the defendant's exception, the plaintiff was allowed to give further details of the conversation had with his wife at their various interviews at Sioux Falls. But it would serve no useful purpose to analyze these statements; the bill of exceptions as we read it, does not affirmatively show that all the cross-examination is given. This being so, and the exceptions (Nos. 5 to 10 inc.) being taken to evidence admitted in re-examination, this Court,—in compliance with its time-honored rule that the exceptant must, at his peril, spread upon the record enough to make error affirmatively appear, —will assume that there was cross-examination not shown by the record which rendered admissible the evidence in question. *Grout Bros.* v. *Moulton*, 79 Vt. 122.

Evidence was admitted in the defendant's behalf tending to show that previous to the separation the plaintiff treated his wife with intolerable severity. The effect of this evidence was by the court limited to mitigation of damages, and the defendant excepted. He then claimed and now argues that if his evidence went far enough to convince the jury that the wife's affections were wholly alienated by the husband's conduct, it would bar this action. *Fratini* v. *Casilini*, 66 Vt. 273, was, like the case in hand, an action for alienation and criminal conversation. It was claimed by the defendant that in order for the plaintiff to recover he must show (a) that his wife had affection for him at the time in question; and (b) that the defendant wholly alienated that affection. But the Court approved the holding in *Dallas* v. *Sellers*, 17 Ind. 479, 79 Am. Dec. 489, to the effect that in such cases, though the wife had no affection for her husband, the defendant had no right to interfere to cut off all chance of its springing up in the future. It is argued that this point is outside of the decision. But we think the point was raised and decided.

*Lewis* v. *Roby*, 79 Vt. 487 was for criminal conversation only. The court was requested to charge that if the wife's affections were alienated by the plaintiff's own acts and not by any act of the defendant, the plaintiff could not recover. This Court said that the defendant was not entitled to this charge and again approved the doctrine of *Dallas* v. *Sellers*.

Of course, if there is any essential difference in respect of the matter now under consideration between actions for alienation and actions for criminal conversation, *Lewis* v. *Roby* is not in point.  But we do not think there is such difference.    The gist of the two forms of action is the same,—the loss of *consortium*. *Daley* v. *Gates*, 65 Vt. 591.   While most of the cases referring to this matter are actions for criminal conversation, *Morris* v. *Warwick*, 42 Wash. 480, 7 Ann. Cas. 687, is an action for alienation and sustains *Fratini* v. *Casilini* as herein construed. While it may be difficult on logical grounds alone to answer the argument of the defendant that there can be no alienation of affections when there is no affection to be alienated, we think there is a rule of policy involved which justifies the decisions. Though the law has no sentimental side, and though it might not agree that "there is hope of a tree, if it be cut down, that it will sprout again", it does, in these cases, indulge the hope that, notwithstanding that affection is dead or appears so, there is lurking in the hearts of the parties some atom left which may spring up into returning affection and result in a reconciliation. It is against the policy of the law to allow this possibility to be interfered with by an outsider.   And, however it might be if, in fact, all affection was destroyed, and that permanently, the law simply declines to recognize the possibility of such a result as long as the marital   relation continues and limits the effect of evidence tending to establish such fact to mitigation of damages.   Human affection is so subtle, human feelings are so difficult to analyze and so likely to be misunderstood, that the rule is fully justified on grounds of public policy.

The defendant's fourteenth exception relates to testimony given by the plaintiff concerning some trouble he had over a settlement with the witness, Norton.   The only exception shown by the record to have been allowed by the court was to the form of the question.   So we cannot consider the question of the admissibility of the evidence—the question argued— and since the form of the question was within the discretion of the court, the exception is unavailing.

Cornelius S. Palmer was called by the plaintiff in rebuttal and qualified as an expert on the law of South Dakota.   Counsel

for the plaintiff was allowed to ask him if certain words in the release set up in the pleadings contemplated or included criminal proceedings under the law of South Dakota, and to answer that according to his construction of the contract they did, and therefore, the release would not, under the law of South Dakota, bar an action by the plaintiff against the defendant. To the admission of this evidence the defendant seasonably excepted. The record shows that this evidence was offered to meet evidence of precisely the same nature introduced by the defendant. Indeed, the examiner claimed that he was reading his questions from a deposition introduced by the defendant. The court sustained the defendant's claim that the construction of the written contract was for the court, but sustained the plaintiff's position as to the contents of the deposition, and admitted the evidence to meet that put in by the defendant. We cannot say that this was error. The depositions are not furnished and we must assume that the court was correct as to their contents. So the ruling was correct if the defendant's conduct opened the door to such testimony. And we think it did under the repeated holdings of this Court. The defendant had submitted expert testimony of the meaning and effect of these words of the contract. This morally tended to render more probable a disputed fact and made admissible evidence of the same character by the plaintiff. *Lytle* v. *Bond's Est.*, 40 Vt. 618; *Perry* v. *Moore*, 66 Vt. 519; *State* v. *Slack*, 69 Vt. 486; *Fuller* v. *Valiquette*, 70 Vt. 502.

Some of the testimony of Judge Palmer wherein he was called upon to construe the contract of release stands different. As the exceptions are drawn, we must hold that the defendant reserved no exception to his statement that the contract was collusive under a certain section of the Code of South Dakota, and that on that account it would be void.

To the next question asked the witness, however, specific objection was made and a sufficient exception reserved. After reading to him the language of the release wherein it required Mrs. Jenness to convey all her interest in the home farm to her son, Perley, and asking him to assume that she executed a deed which did not convey all her interest in the farm, the witness was asked to "tell us whether under the laws of South Dakota,

that would render this contract void." This was admitted
not because the defendant had made it so by his evidence,
but on the ground that it would not be a construction of the
contract. Subject to the defendant's exception, he answered
that under the assumption, the release would be void under the
laws of South Dakota.

Though the law of South Dakota was to be proved as a
fact, the construction of this contract executed thereunder was
for the court. The witness was to testify only to abstract facts,
—to state what the law of South Dakota was; it was then for
the court by proper instructions to apply that law to the contract
in hand,—to tell the jury just the effect of the contract upon
the rights of the parties to the suit, according to the different
conclusions which they might reach regarding the law of South
Dakota. Whether Judge Palmer did or did not correctly apply
that law to the contract is outside the question. He was allowed
to do what belonged to the court to do, and this was error.
If we could say that he correctly applied the law of South Dakota
to the contract, we might say that the error was harmless;
but this we cannot do, because, if for no other reason, the jury
were to say what that law, in fact, was.

The plaintiff testified, without exception, that when he
parted from his wife at Sioux Falls, she told him that if he had
occasion to write about any of the business to write Porter,
her attorney. Thereupon, Mr. Howe, counsel for the plaintiff,
took the stand and subject to defendant's exception was allowed
to read in evidence certain letters which he had written to Porter
and the answers received from him, to the effect that the plaintiff
was dissatisfied with the deed then deposited with the Sioux
Falls bank, for the reason that it was insufficient under our
law, and that he required a new joint deed,—which the wife
refused to execute. The evidence tended to show that Porter
was, and was to continue, Mrs. Jenness' attorney in all the
business transacted or pending at Sioux Falls. As we have
seen, this defendant seeks to take the benefit of this contract
of release, and if it contains an unperformed condition precedent,
his rights are affected thereby just the same as Mrs. Jenness'
would be. The only foundation for his rights under that con-
tract is Jenness' undertaking. If that was conditional, this

defendant is bound by that condition. Williston's Pollock Cont. 271. The evidence tended to show that a failure (when requested) to make the conveyance called for by its terms, would under the law of South Dakota amount to a repudiation of the contract, and that thereafter it could not be treated of validity so as to constitute a bar to this action. As this evidence stood, it became material to show this request, and since it was made through Mrs. Jenness' attorney, and since in the matter of the contract she represented the defendant, the evidence was properly admitted. It is doubtless true that more was admitted than was required, and some that was quite irrelevant, but if there was error in this, it was harmless.

In the correspondence it appears that Mrs. Jenness only declined to execute the joint deed on the ground that she had already met the requirements of her contract in that behalf, and her refusal came after her divorce was granted. There-afterwards, the plaintiff received the sole deed and the two thousand dollars from the bank, put the deed on record, took a deed from the son Perley, and is still in undisturbed possession of the farm and the money. The defendant now argues that in these circumstances the plaintiff cannot be heard to say that the release was void for the reason stated. But this was not his position below. The only exception which the record shows that he took to the admission of the correspondence referred to (save only those covering the rulings hereinbefore held to have been harmless) was to the sufficiency of the proof of Porter's authority. The court expressly limited the evidence to the establishment of notice and refusal, and the subsequent conduct of the plaintiff was not referred to by court or counsel in this connection, though it was in another as we shall see.

The defendant called the plaintiff in rebuttal and showed by him that when he arrived at Sioux Falls he went to see the high sheriff and then went to see a lawyer named Kirby. Upon objection being made, counsel for the defendant informed the court that, for the purpose of meeting the plaintiff's claim that the release was obtained by fraud, he proposed to show that the plaintiff employed Kirby to bring suit against the defendant, and after he signed the release, he made no use of Kirby's services. The court ruled that he might go so far

as to inquire of the plaintiff what he went to the attorney for, but that he could not go into what took place between them. Whereupon, without availing himself of the court's ruling, the defendant offered to show "that after he got through talking with Kirby and it was understood between them that if he did not make a settlement he was coming back to have a suit brought, he left." This was excluded and the defendant excepted. The ruling of the court must stand. Privilege is a preliminary question for the court, and we cannot review its action thereon. *Childs* v. *Merrill,* 66 Vt. 302.

Nor was there anything in the so-called Marcou incident that affords the basis of an available exception. Until the very last there was nothing at all certain about uncovering anything improper by the offered evidence. At the last it was offered to show by Marcou that the plaintiff had offered to forgive him a certain debt if he would testify as his brother had. This offer came after the evidence was all in. Marcou had already testified that he had never talked with the plaintiff "about this matter"—which apparently refers to the offer to pay the witness for his testimony. In disposing of the question, the court said that in view of Marcou's previous testimony and the time at which the offer was made, it would exclude the evidence. It is apparent that the court considered that Marcou was too unreliable as a witness to make it worth while to go into the subject matter covered by this offer. It was in the court's discretion and we cannot say that that discretion was abused.

Several other exceptions were taken to the admission and exclusion of evidence, but all were waived except No. 2, which was to the admission of evidence too unimportant to be harmful.

The defendant seasonably presented sixteen requests to charge, and excepted to the court's failure to comply therewith.

The first was to the effect that regardless of the question of its validity, the release was evidence tending to show the amount of the plaintiff's damage to its date. The second was of like character, but it characterized the release as an admission by the plaintiff regarding the amount of his damage to its date. It is apparent from the charge which is before us, that the court intended and attempted to comply with these requests. If the defendant thought that the charge as given fell short of

a sufficient compliance, he should have called specific attention to the matter, pointing out wherein it fell short of the request. This he failed to do. Consequently his exception will not avail.

The fourth, fifth, sixth and seventh requests challenge the plaintiff's right to deny the validity of the release. It is true that the plaintiff was a party to the contract which he now says is not available to the defendant because it was illegal on the several grounds stated, and it is true that he still holds the avails of that contract. Yet, this does not prevent him from asserting its illegality. The defendant quotes the language of Lord Mansfield in *Holman* v. *Johnson,* 1 Cowp. 341, wherein he says "The objection that a contract is immoral or illegal sounds at all times very ill in the mouth of a defendant. It is not for his sake, however, that the objection is ever allowed, but is founded on general principles of policy, which the defendant has the advantage of contrary to the real justice as between him and the plaintiff,—by accident, if I may say so." This language discloses the very reason why the plaintiff is not precluded from asserting the illegality of the contract. It is because the policy of the law allows him to. The illegality is affected with a public interest and therefore is not subject to individual ratification. This distinction between acts and contracts which are void or voidable because of a fraud affecting individual interests only and those which involve public wrongs is most important and must be carefully preserved. It is thus stated: Where the transaction is contrary to good faith and the fraud affects individual interests only, ratification is allowed; but when the fraud is of such a character as to amount to crime or other wrong involving the public interests, ratification is not allowed. *Henry etc. Association* v. *Walton,* 181 Pa. St. 201, 59 Am. St. Rep. 636. It is because of the public interests and not on account of a desire to aid a party that the court refuses to enforce a contract of this nature, and the doctrine of estoppel does not apply. *Standard Fur. Co.* v. *Van Alstine,* 22 Wash. 670, 79 Am. St. Rep. 960; *Brown* v. *First Nat. Bank,* 137 Ind. 655; Beach Mod. Cont. §1499. Some of the cases go so far as to hold that the courts will not lend their aid to the enforcement of such contracts though the party consents and expressly

waives the illegality.  *Union Coll. Co.* v. *Buckman,* 150 Cal. 159, 119 Am. St. Rep. 164.

The law leaves the parties to an illegal contract where it finds them.  It will not enforce it either in support of an action or a defence.  It allows either party to plead or prove its true character in bar of an action or a defence founded thereon. The question of the devisability of this  contract does not appear to have been raised below.  A party .cannot complain of a failure to charge on a theory inconsistent with his defence, *Simkins* v. *Eddie,* 56 Vt. 612, nor can he raise a question in this Court not raised below.  The $1,500 which it is claimed the defendant paid toward the settlement does not enlarge his rights if the contract was wholly illegal.

Fraud and insufficient performance, however, may be waived, and if waived are not available as a defence to the contract.  The defendant appears to treat the seventh request as calling for a charge on the question of waiver—as the fourteenth expressly does.

It appears from the charge that at the trial the defendant made the question of waiver depend upon the law of South Dakota.  And the court submitted to the jury the question whether under the laws of that state the plaintiff's acceptance of the deed with full knowledge of its insufficiency amounted to a waiver.  To this the defendant took no exception.  In view of the peculiar language of the requests, we think it was for the defendant to call the court's specific attention to the omission, if he regarded the charge on the question of waiver inadequate.

The ninth request was properly ignored, for, as the court said, there was no evidence tending to show that the plaintiff participated in any fraud on the court regarding Mrs. Jenness' residence.

Nor was there error in the failure to comply with the tenth request.  In the first place, there could be no estoppel in the defendant's favor, unless he knew the contents of the release. He must have relied upon it in order for it to have furnished the foundation of an estoppel.  If he was ignorant of it, he could not have relied upon it.  If he knew of it and its contents, he also knew all the material facts connected with it and could

judge of its validity as well as the plaintiff. In marrying the woman in reliance upon its validity (if it be conceded that the evidence so tended to show) he took the chance of its legality.

There was no occasion to comply with the thirteenth request. The deed was not such as the contract required—nor did the defendant claim otherwise at the trial.

The fifteenth and sixteenth requests require no attention as the evidence is not before us.

The other requests were all sufficiently complied with.

At the close of the charge the defendant excepted to the failure of the court to charge that if the jury found the divorce invalid and the release valid, the plaintiff could only recover damages from the date of the release to the date of bringing the action. The trouble with the request is that it improperly limits the recovery. *Consortium* is continuous in its nature. A spouse is entitled to it as long as the marital relation continues. Its loss by alienation or criminal conversation in a case like this is permanent. The plaintiff was not limited in the event named to damages measured by the loss of *consortium* down to the date of suit. He was entitled, if entitled at all, to damages measured by the permanent loss of his wife's aid, comfort and companionship. *Nichols* v. *Nichols*, 147 Mo. 387.

*Reversed and remanded*